**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | |
|---|---|
| **LATOSHA SHEREE BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **NO. 1:15-cv-00046** |
| | )  **CHIEF JUDGE CRENSHAW** |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,[1]** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Latosha Sheree Brown filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to

obtain judicial review of the final decision of the Social Security Administration

("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") as provided under Title II and XVI of the Social Security

Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the

Administrative Record (Doc. No. 18), to which Defendant has filed a response. (Doc. No. 19.)

Plaintiff has also filed a reply. (Doc. No. 22.)

Upon review of the administrative record as a whole and consideration of the parties'

filings, Plaintiff's motion (Doc. No. 18) is **DENIED** and the decision of the Commissioner is

**AFFIRMED**.

## I. INTRODUCTION

Plaintiff filed an application for DIB and SSI on October 31, 2011. (Doc. No. 10,

Transcript of the Administrative Record, at 60-61.)[2] She alleged a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

October 25, 2010. AR 60-61. Plaintiff asserted that she was unable to work because of fibromyalgia, arthritis, hip problems, asthma, hypertension, depression, and anxiety. AR 69.

Plaintiff's applications were denied initially and upon reconsideration. AR 60-63. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Ronald E. Miller on September 6, 2013. AR 37. The ALJ subsequently denied the claim on November 1, 2013. AR 8-10. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 19, 2015, thereby making the ALJ's decision the final decision of the Commissioner. AR 1-3. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision and made the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since October 25, 2010, the alleged onset date. (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*\*\*

3. The claimant has the following severe impairments: fibromyalgia; arthritis of the right knee; a back impairment; chronic bursitis of the right hip; obesity; and asthma (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

---

2 The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for ability to occasionally lift up to 20 pounds, to stand and walk for 2 hours each out of 8 hours, and to sit for 6 hours out of 8 hours, with no climbing of ladders, ropes or scaffolds or crawling, occasional climbing of stairs and ramps, stooping, crouching and kneeling, and no exposure to work at unprotected heights or around dangerous moving machinery, or to dust, fumes or gases.

*** 

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

*** 

7.  The claimant was born on January 20, 1977 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education (10th grade) and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1564 and 416.964).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

*** 

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13-21.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). See Richardson v. Perales, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)); Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in Richardson).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. See, e.g., Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). See, e.g., Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. See Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). See also Edwards v. Comm'r of Soc. Sec., 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed

impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. See Combs, supra; Blankenship v. Bowen, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. Combs, supra. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. Cruse, 502 F.3d at 539; Jones, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. Combs, supra.

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997)). See also Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a prima facie case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. Longworth, 402 F.3d at 595. See also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 528 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past

relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 652 (6th Cir. 2009). See also Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1028-29 (6th Cir. 1990); Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88-89 (6th Cir. 1985); Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). See also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 13-21.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) failing to find that Plaintiff had severe mental health impairments; (2) rejecting the opinions of treating medical professionals; and (3) improperly evaluating Plaintiff's credibility. (Doc. No. 18-1 at 15.) Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. (Id. at 31-32.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. Faucher v. Secretary, 17 F.3d 171, 176 (6th Cir. 1994). See also Newkirk v. Shalala, 25 F.3d 316, 318 (1994). The Court addresses Plaintiff's assertion of error below.

**1. Mental impairments.**

Plaintiff first argues that the ALJ erred by failing to find that she suffers from a severe mental health impairment at step two of his analysis despite evidence in the record that Plaintiff has been diagnosed with anxiety and depression. (Doc. No. 18-1 at 15-17.) Plaintiff points to treatment notes from Centerstone mental health center indicating that, despite the ALJ's suggestion that Plaintiff received no mental health treatment past May of 2012, she in fact continued to receive such treatment just weeks before the September 2013 administrative hearing. (Id. at 17.) Plaintiff also notes that she received a Global Assessment Functional ("GAF")[3] score of 44 at Centerstone, which indicates "severe symptoms or serious impairment in social or occupational functioning." (Id.)

---

[3] A GAF score is a "subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.'" DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 415 (6th Cir. 2006) (internal citations omitted).

The record indicates that Plaintiff sporadically attended therapy sessions at Centerstone. Plaintiff claims that a Centerstone progress note from August 20, 2013 indicating that Plaintiff has "kept only one therapy appointment in the past 11 months" is inaccurate. See AR 595. Plaintiff relies on four sessions that took place, respectively, in October of 2012, December of 2012, February of 2013, and March of 2013 to refute this statement, yet the notes from these encounters do little to demonstrate that Plaintiff was anything other than erratic with respect to her treatment. The October 2012 note states that Plaintiff "stopped coming to therapy because she thinks the therapy wasn't helpful[.]" AR 615. Plaintiff was 40 minutes late to the February 2013 session, AR 606, while the March 2013 note indicates that Plaintiff "hasn't kept a therapy appointment in over 7 months" and that she continued to disregard the provider's recommendations. AR 603.

It is true that the ALJ referenced the August 20, 2013 note's statement that Plaintiff had failed to attend a therapy appointment for 11 months to emphasize Plaintiff's infrequent treatment. AR 16. While the note's statement may not have been entirely accurate as to the number of sessions that Plaintiff skipped, the Centerstone records repeatedly document Plaintiff's failure to consistently seek treatment for her mental health.[4] In addition to the above examples, a note from November of 2012 indicates that Plaintiff "has been non-compliant with therapy." AR 595. Four months earlier, Plaintiff cancelled an appointment because she "ha[d] other things to do." AR 566. Plaintiff cancelled other appointments, sometimes without any justification, AR 602, and simply failed to show up for others. AR 613-14. Plaintiff's facile focus on the ALJ's factual findings regarding her attendance at therapy sessions is of no help to the Court's analysis.

---

[4] The Court emphasizes that it was Centerstone provider Billy Brown, and not the ALJ, who indicated that Plaintiff had not attended therapy in more than 11 months. AR 595. The ALJ simply quoted this notation by Mr. Brown. AR 16.

The relevant issue is instead whether there is substantial evidence to support the ALJ's determination that Plaintiff's alleged mental health impairments cause no more than a "minimal effect" on her functional capacity. See Wheeler v. Comm'r of Soc. Sec., No. 2:16-cv-327, 2017 WL 3301571, at *5 (S.D. Ohio Aug. 3, 2017) ("[I]f an impairment has 'more than a minimal effect' on the claimant's ability to do basic work activities, the ALJ must treat it as 'severe.'") (citing Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (July 2, 1996)). Plaintiff broadly asserts that she suffers from "severe mental health impairments," but makes only passing references two specific conditions: depression and anxiety disorder. (Doc. No. 18-1 at 16.)

With respect to depression, Plaintiff points to records documenting her treatment with Dr. Clement Aluyi, her treating internist, who noted that Plaintiff was "sad and depressed" during one encounter and "evidently appear[ed] depressed" during another encounter. AR 403, 521. Such notations fail to establish any functional impediments caused by depression, however, thus lending little support to Plaintiff's argument. See Higgs v. Bowen, 880 F.2d at 863 (holding that the mere diagnosis of a condition "says nothing about the severity of the condition"); Krakow v. Comm'r of Soc. Sec., No. 13-14388, 2015 WL 1301300, at *10 (E.D. Mich. Mar. 23, 2015) ("[S]imply because plaintiff suffers from certain conditions or carries certain diagnoses does not equate to disability[.]"). Notably, Dr. Aluyi did not identify depression as a condition that impacts Plaintiff's ability to work in his RFC assessment. AR 642-43.

In contrast, Dr. Aluyi listed "anxiety" as one of the "multiple health problems" allegedly suffered by Plaintiff. AR 643. However, Dr. Aluyi fails to identify any functional limitation caused by anxiety or any other mental condition in the RFC assessment, which is especially relevant because his office notes similarly fail to document any significant problems associated with anxiety. Indeed, while Dr. Aluyi listed "anxiety disorder NOS" in his assessment of

Plaintiff in February of 2012, AR 505, none of his subsequent six encounters with Plaintiff identify anxiety as a current diagnosis. AR 509, 513, 517, 521, 548, 551. In fact, he noted during two of their final three encounters that Plaintiff was experiencing "no anxiety," AR 546-52, and stated during their final encounter on July 2, 2012 that Plaintiff was "doing well on current [medication] regimen except for episodic jittery feelings." AR 553.[5] This evidence, in conjunction with Plaintiff's statement to a Centerstone provider that same day that her mental health medication was "helpful" and "wonderful," AR 567, as well as the mild findings derived from Dr. Michael Loftin's psychological evaluation, AR 465-70, bolsters the ALJ's conclusion that the "record as a whole will not reasonably support finding more than mild mental functional limitations[.]" AR 17.[6]

Plaintiff's reliance on the low GAF score she received during her limited time at Centerstone does not negate such evidence. Although Plaintiff correctly cites the Sixth Circuit's statement that a GAF score "may be of considerable help to the ALJ in formulating the RFC," Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002), there is ample case law indicating that GAF scores are not necessary to an evaluation of the severity of an alleged mental impairment. See Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); Kennedy v. Astrue, 247 F. App'x 761, 766 (6th Cir. 2007) ("[T]he Commissioner has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs[.]") (internal citations and quotation marks omitted). The

---

[5] Notably, and confusingly, Dr. Aluyi also stated during this final encounter that Plaintiff was experiencing "no anxiety." AR 554.

[6] Defendant correctly notes that, contrary to Plaintiff's assertion otherwise, Dr. Loftin's mild findings are not inconsistent with the ALJ's conclusion that none of Plaintiff's alleged mental conditions are severe in nature. See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

low GAF score is thus insufficient to overcome the substantial evidence that supports the ALJ's step two findings.

Plaintiff argues that by failing to find that her alleged mental impairments are severe in nature, the ALJ "could then proceed to discount and ignore the impact of any mental health impairments on the claimant's ability to work." (Doc. No. 18-1 at 18.) To the contrary, the ALJ specifically discussed the effectiveness of Plaintiff's medication on her mental conditions during the subsequent steps of the five-step evaluation. See AR 18-19. Moreover, once an ALJ determines that a claimant suffers from at least one severe impairment, which the ALJ clearly did in this case, AR 13, any "failure to find additional severe impairments at step two does not constitute reversible error." Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)). See also Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) ("The ALJ specifically found that [several of the claimant's impairments] qualified as severe impairments . . . . [The claimant] therefore cleared step two of the sequential analysis . . . . The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant."). The Court therefore rejects this assertion of error and finds that substantial evidence supports the ALJ's step two conclusions. Alternatively, the Court finds that any error caused by the ALJ's failure to identify anxiety or depression as severe impairments is harmless.

**2. Treating physicians.**

Plaintiff next contends that the ALJ erred by failing to give "appropriate deference" to the opinions of her treating physicians, Dr. Aluyi and Dr. Norman McNulty, the latter of whom is a neurologist who treated Plaintiff on three occasions in 2013 as part of a neurological consultation. (Doc. No. 18-1 at 18.) Plaintiff argues that, contrary to the ALJ's claim otherwise,

the evidence of record supports the functional limitations contained in the RFC assessments completed by these two physicians. Plaintiff also faults the ALJ for according greater weight to the opinions of two non-examining physicians who did not have access to Plaintiff's complete medical file. (Id. at 22.)

It is well-established that the "treating physician rule" contained in 20 C.F.R. § 404.1527(c)(2), requires the ALJ to accord controlling weight to an opinion provided by a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." If the ALJ does not give controlling weight to a treating physician's opinion, he must consider several factors in determining how much weight to accord the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and any specialization of the treating physician. See id. § 404.1527(c)(2)-(6). The ALJ must also provide "good reasons" for the weight ultimately given to the treating source's opinion if he does not give controlling weight to the opinion. Id. § 404.1527(c)(2).

One of the ALJ's stated reasons for rejecting the opinions provided by Drs. Aluyi and McNulty is the similarity between the functional limitations recommended by each physician. The ALJ stated that the "exact duplication of limitations provided in the two opinions from two different doctors strongly suggests that they were not independently arrived at medical opinions." AR 15. It is unclear whether the ALJ's statement is intended to suggest that Drs. Aluyi and McNulty coordinated their responses to the RFC assessment forms that were completed, or that Dr. McNulty's opinion, which was completed one day after Dr. Aluyi's, was copied from Dr. Aluyi's opinion. Regardless, the Court finds this suggestion of duplicitous

behavior by the treating physicians insufficient to reject the merits of the opinions rendered by them.

While it is true that the "checked" portions of the opinions indicating Plaintiff's specific functional restrictions are identical, including the portions relating to both exertional and nonexertional limitations, the explanations provided for the conclusions they reached are not identical. See AR 638-39, 642-43. The relevant questions are therefore whether these explanations provided sufficient support for the respective opinions, and whether the ALJ sufficiently explained the basis for rejecting such opinions. See Rogers, 486 F.3d at 242 ("If the opinion of a treating physician regarding the nature and severity of a claimant's condition is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, then it will be accorded controlling weight.") (internal citations and quotations omitted); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

As noted above, Plaintiff was referred to Dr. McNulty specifically for an "evaluation of headaches and bilateral hand numbness." AR 635. According to his own records, the stated conditions Dr. McNulty addressed during each of his three encounters with Plaintiff were migraines and suspected carpal tunnel syndrome. AR 628, 632, 635. During their final encounter, Dr. McNulty noted that Plaintiff had no difficulty with balance, no gait or station abnormalities, and full motor strength in Plaintiff's arms and legs. AR 629. Nevertheless, Dr. McNulty opined that Plaintiff could not stand for more than two hours per day, could not walk more than two

hours per day, could not lift 10 pounds, could "occasionally" lift and/or carry less than five pounds, and could "frequently" lift and/or carry less than 10 pounds. AR 638.[7]

As an initial matter, it makes little sense that a claimant would "occasionally" be able to lift less weight (less than five pounds) and "frequently" be able to lift more weight (less than 10 pounds). Such contradictory findings tend to undermine the consistency, and thus the validity, of the opinion. See Martin v. Comm'r of Soc. Sec., 658 F. App'x 255, 258 (6th Cir. 2016) (affirming ALJ's decision to discount opinion of treating physician that was "internally inconsistent"). Moreover, Dr. McNulty provides no support for his proposed restrictions pertaining to standing, walking, lifting, carrying, pushing, and pulling in his RFC assessment, but merely lists diagnoses that were noted by other providers, including low back pain, fibromyalgia, and degenerative arthritis of the right knee. AR 638-39. He fails to identify any clinical findings or imaging studies that would support any of his proposed restrictions, which weighs against his conclusions. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Further undermining Dr. McNulty's opinion is his assessment of the limitations caused by the conditions that he actually treated. For example, there is no mention in his RFC assessment of migraines, which was the lone condition that Plaintiff repeatedly complained of throughout her treatment with Dr. McNulty. AR 628, 632, 635. Additionally, while Plaintiff showed improvement with respect to her carpal tunnel syndrome symptoms during her second encounter with Dr. McNulty, AR 632, she again complained of bilateral hand numbness during

---

[7] "Occasionally" is defined as "up to 1/3 of workday," while "frequently" is defined as "up to 2/3 of workday." AR 638.

her final visit with Dr. McNulty. AR 628. Nevertheless, Dr. McNulty's RFC assessment indicates that Plaintiff can "frequently" grasp and feel, which is the least restrictive option contained in the RFC assessment form. AR 639. Therefore, the only two conditions with symptoms actually identified during her treatment were, according to Dr. McNulty's opinion, not severe enough to impact any of Plaintiff's functional limitations, a determination that undermines the remaining restrictions relating to conditions that Dr. McNulty did not treat. See 20 C.F.R. § 404.1527(c)(2)(ii) ("We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.").

Dr. Aluyi's opinion is similarly inconsistent with his own medical records. Like Dr. McNulty, Dr. Aluyi proposed extremely limiting restrictions regarding Plaintiff's ability to lift, carry, push, and pull. See AR 642. When prompted to "describe the degree" of the limitations he recommended, Dr. Aluyi simply listed diagnoses, including lumbosacral radiculitis, fibromyalgia, and arthritis of the right knee. AR 642-43. However, Plaintiff exhibited remarkably mild symptoms throughout the course of her treatment with Dr. Aluyi, particularly during their final three encounters, which revealed no body aches, no muscle aches, no joint pain, and no joint swelling. AR 546-47, 549-50, 553-54. Significantly, Plaintiff described a relatively mild pain level during her final visit with Dr. Aluyi (4 out of 10) and an ability to perform daily activities of bathing, walking, and housekeeping without any side effects from her medication. AR 553.

Furthermore, examinations during Plaintiff's final two visits with Dr. Aluyi revealed "minimal" lumbosacral tenderness, "minimal" bilateral knee tenderness, and "mild" generalized tenderness in her extremities, with no clubbing, no edema, and normal bilateral reflexes. AR 551,

555. Such findings are inconsistent with the severity of the restrictions proposed in Dr. Aluyi's RFC assessment, as discussed by the ALJ, AR 15, and thus weigh against the supportability of the opinion. This is especially true in light of the few objective medical findings in the record, which include a right knee x-ray that was normal, a lumbar spine x-ray that was normal, and a subsequent lumbar x-ray that showed mild degenerative changes. AR 389-90, 535.[8]

Plaintiff's brief dwells heavily on the ALJ's decision to accord greater weight to the opinions of two non-examining physicians than those provided by the two treating physicians, and references language from case law and relevant regulations indicating that the Commissioner will generally "give more weight to opinions from your treating sources." 20 C.F.R. § 404.1527(c)(2). While this is true, the very case Plaintiff cites in support of this principle reiterates that "the opinion of a treating physician is entitled to substantial deference <u>only if it is supported by sufficient medical data.</u>" <u>Shelman v. Heckler</u>, 821 F.2d 316, 320-21 (6th Cir. 1987) (citing <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985)) (emphasis added).

Here, Dr. Aluyi has provided no support for the extreme limitations contained in his opinion, instead listing diagnoses that, although documented in his treatment records, fail to support the severity of such limitations. Moreover, a diagnosis does nothing to explain the severity of the recommended restrictions. <u>See</u> <u>Hill v. Comm'r of Soc. Sec.</u>, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation omitted); <u>Jones v. Comm'r of Soc. Sec.</u>, No. 13-cv-14217, 2015 WL 1004681, at *8 (E.D. Mich. Mar. 6, 2015) ("[T]he mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact.") (citing <u>Foster v. Bowen</u>, 853 F.2d at 489). The Court also notes

---

[8] The Court also notes that, like Dr. McNulty's opinion, Dr. Aluyi confusingly determined that Plaintiff could only "occasionally" lift and/or carry less weight (less than five pounds), but could "frequently" lift a greater amount of weight (less than 10 pounds). AR 642.

that despite Plaintiff's assertion otherwise, the ALJ was entitled to rely on the opinions of the non-examining physicians. See Overholt v. Astrue, No. 3:07-cv-322, 2008 WL 2645662, at *9 (E.D. Tenn. July 2, 2008) (holding that the ALJ is entitled to rely on the opinions of state agency doctors) (citing Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)); 20 C.F.R. § 404.1513a(b)(1) ("Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

Finally, Plaintiff faults the ALJ for relying on the opinions of the non-examining physicians because they "did not have access to a good portion of [Plaintiff's] medical records." (Doc. No. 18-1 at 22.) It is true that the ALJ relied on the opinions of non-examining physicians that were rendered in June and July of 2012, which was more than one year before Plaintiff's treatment with Drs. Aluyi and McNulty ended. However, conspicuously absent from Plaintiff's brief is any identification of medical evidence that would have changed the opinions of the non-examining physicians. Plaintiff instead cites the notes from her three visits with Dr. McNulty and various notes from her treatment with Dr. Aluyi, (Id. at 24), only two of which document encounters that took place after the non-examining physicians' opinions were rendered, AR 546, 549. As previously discussed, none of these records demonstrate symptoms to support the severity of the limitations contained in the treating physicians' RFC assessments. See Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) ("The [Commissioner] . . . is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary.").

Moreover, the Sixth Circuit has stated that "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record . . . . The opinions need only be 'supported by evidence in the case record.'" Helm v.

Comm'r of Soc. Sec. Admin., 405 F. App'x 997, 1002 (6th Cir. 2011). The ALJ concluded that the opinions of the non-treating physicians were supported by the evidence of record with respect to their assessments of Plaintiff's ability to lift and carry, AR 20,[9] a conclusion that Plaintiff does not dispute in her brief.

Notably, the ALJ also discussed in detail the additional treatment that Plaintiff received from Drs. Aluyi and McNulty after the dates on which the non-examining physicians rendered their opinions, including the mild symptoms demonstrated during such treatment. AR 15-17, 19. This is in stark contrast to the situation presented in the case cited by Plaintiff, Blakley v. Comm'r of Soc. Sec., in which the ALJ failed to provide good reasons for discounting the opinion of the treating physician and failed to consider more than 300 pages of medical evidence that was unavailable to the non-examining sources whose opinions were accorded great weight. See 581 F.3d at 409 ("[B]ecause much of the over 300 pages of medical evidence reflects ongoing treatment and notes by [the claimant's] treating sources, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record."). Overall, the Court finds that the ALJ adequately explained the reasons for rejecting the opinions of Drs. Aluyi and McNulty, which distinguishes this case from the reversible error committed by the ALJ in the Blakley case. Cf. Robinson v. Comm'r of Soc. Sec. Admin., No. 5:14-cv-291, 2015 WL 1119751, at *11 (N.D. Ohio Mar. 11, 2015) ("An ALJ's unsupported rejection of a treating source and reliance on non-examining sources without full access to the record appeared to be the 'overriding danger' that existed in Blakley, is not similarly present here.") (emphasis added).

---

[9] Contrary to Plaintiff's suggestion that the ALJ wholly endorsed the opinions of the non-examining physicians, the ALJ found that the additional limitations recommended by the non-examining physicians were "overly optimistic" and thus declined to accord significant weight to those portions of the opinions. AR 20.

Even a single reason for rejecting a treating source opinion can be sufficient if it "reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source . . . ." Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 (6th Cir. 2009) (holding that an ALJ's rejection of a treating physician's opinion because the treating physician had last seen the claimant two years prior to rendering his opinion was sufficient). The ALJ in the instant matter clearly discussed the inconsistency and lack of supportability of the opinions provided by the treating physicians, both of which are regulatory factors that were appropriately considered. See 20 C.F.R. § 404.1527(c)(3), (4). The ALJ also discussed the lack of diagnostic testing ordered by Dr. McNulty, which relates to the nature of the treatment relationship. See id. § 404.1527(c)(2). Accordingly, the Court finds that the ALJ fulfilled his regulatory duty to offer "good reasons" for rejecting the opinions of Drs. Aluyi and McNulty, and thus provided substantial evidence to support his determination.

**3. Credibility.**

Plaintiff finally argues that the ALJ erred in his credibility determination. Plaintiff claims that the ALJ failed to provide substantial evidence to support his findings by "cherry picking a couple of examples of improved health" over the course of her treatment to discount her credibility. (Doc. No. 18-1 at 30-31.) The Sixth Circuit has noted that a reviewing court should be "particularly reluctant to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has seen the claimant in the flesh and has had the opportunity to observe [her] demeanor." Bailey v. Sec'y of Health & Human Servs., 922 F.2d 841, 1991 WL 310, at *4 (6th Cir. Jan. 3 1991) (citing Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987) (per curiam), cert. denied, 484 U.S. 1075 (1988)) (internal quotations omitted). Indeed, a claimant who challenges a credibility determination "face[s] an uphill battle." Daniels

v. Comm'r of Soc. Sec., 152 F. App'x 485, 488 (6th Cir. 2005). See also Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are virtually 'unchallengeable.'") (quoting Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 112-13 (6th Cir. 2010)). However, the ALJ must "clearly state his reasons" for discounting a claimant's credibility. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994) (citing Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir. 1987)).

The Court finds that the ALJ in this case clearly provided such reasons. Contrary to Plaintiff's claim of "cherry picking," the ALJ identified specific evidence that undermined Plaintiff's allegations of disabling pain. Despite Plaintiff's claim that she is unable to even get out of bed "at least three days a week," AR 51, the ALJ noted that there was no evidence from any provider indicating a need for such "recumbent rest," and additionally noted that Plaintiff reported to a provider that she walks on daily basis. AR 19. The ALJ further discussed Dr. Aluyi's treatment notes indicating that Plaintiff could perform activities of daily living such as bathing, walking, and housekeeping, despite Plaintiff's hearing testimony that her kids performed the vast majority of her housework. AR 19, 48, 553. The ALJ also noted that Plaintiff was working part-time nearly two years after her alleged onset date, AR 19, which was a reasonable consideration. See Young v. Astrue, No. 2:12-cv-0050, 2013 WL 4456250, at *14 (M.D. Tenn. Aug. 15, 2013) ("[I]t was entirely within the ALJ's discretion to consider plaintiff's part-time job as a daily activity in making her credibility determination."), report and recommendation adopted sub nom., 2014 WL 3724844 (M.D. Tenn. July 25, 2014), aff'd No. 14–6075 (6th Cir. Feb. 26, 2015).

"As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, [the court is] not to second-guess[.]" Ulman v. Comm'r of Soc. Sec., 693 F.3d 709,

714 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). The Court finds that the cited evidence represents substantial support for the ALJ's credibility determination. Plaintiff's assertion of error is therefore rejected.

## V. CONCLUSION

For the above stated reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 18) is **DENIED**. An appropriate Order will accompany this memorandum.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE